**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David LORD, Defendant-Appellant.**

No. 82–1347.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1983.

Decided July 26, 1983.

Jerry Diskin, Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Katrina Pflaumer, Seattle, Wash., for defendant-appellant.

Before BROWNING, Chief Judge, and FLETCHER and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

A jury convicted appellant David Lord on two counts of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A), one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a), and one count of carrying a concealed weapon in the commission of a felony in violation of 18 U.S.C. § 924(c). He was sentenced to five years in prison on each count, the sentences to run concurrently.

On appeal Lord argues that (1) the district court erred in failing to determine whether the prosecution caused a key defense witness to refuse to testify; (2) the district court erroneously struck the entire testimony of another defense witness after she invoked the fifth amendment privilege against self-incrimination; (3) the district court erroneously excluded expert psychiatric testimony; and (4) the district court committed reversible error when it made certain evidentiary rulings and gave certain jury instructions.

With regard to Lord's first argument, we hold that the district court erred in failing to determine whether the prosecution caused an important defense witness to refuse to testify. Therefore, we vacate the conviction and remand the case for an evidentiary hearing on this issue. We need address Lord's other arguments only briefly.

FACTS

At the time of the events underlying his conviction, Lord resided in rural Kitsap County in Washington. Lord had returned to Kitsap County from the Vietnam war, where he suffered leg injuries and allegedly was exposed to Agent Orange. He also suffers from histoplasmosis, which has caused a loss of sight in his right eye. In late 1981, Lord experienced some loss of sight in his left eye. He then took what he understood to be a temporary leave from his job. One week later, he received a severance notice from his employer.

The government and Lord dispute the events preceding the drug transaction underlying his convictions. Lord contends that he met Joe Spaulding, a Drug Enforcement Administration (DEA) informer, in December 1981 and that Spaulding solicited cocaine from him and others. Spaulding testified that he first met Lord in early January 1982 when Joe Cook, an acquaintance of Lord's, introduced Lord as a drug dealer. According to Spaulding, Lord made the first overture for the cocaine sale.

Lord admitted that he and Cook delivered to Spaulding one-half gram of cocaine on January 7, 1982. Lord contends, however, that after this delivery Spaulding and DEA agents, posing as "Mafia connections," threatened Lord and Cook with harm unless they could deliver much more cocaine. Lord testified at trial that in the following two weeks Spaulding telephoned many times to pressure him to deliver more cocaine. On January 21, after obtaining a large quantity of cocaine from Michael Romero, Lord arranged another meeting with Spaulding and a DEA agent posing as Spaulding's financier. At that meeting, later the same day, Lord and Romero were arrested and searched. DEA agents found a .25-caliber automatic pistol and small quantities of marijuana, LSD, and cocaine on Lord. Approximately ten ounces of cocaine were discovered in Lord's car.

Lord's principal defense at trial was entrapment. Romero pled guilty and testified against Lord but acknowledged that Lord seemed to be under much pressure in the transaction. Lord attempted to call an expert psychiatrist to establish Lord's unusual susceptibility to entrapment. The psychiatrist would have testified that Lord's illnesses, his unemployment, and his experiences in Vietnam lowered his ability to resist pressure to consummate the drug sale. The district court excluded the psychiatric testimony under Fed.R.Evid. § 403.

Two of Lord's witnesses exercised their fifth amendment privilege against self-incrimination. The first was Robyn Ogden, a waitress at a bar that Spaulding frequented. Ogden testified on direct examination that Spaulding very often badgered people for drugs and that he had a poor reputation in the community. During cross-examination, the prosecutor asked Ogden to name the people whom she had introduced as cocaine suppliers to Spaulding. She refused and invoked her fifth amendment privilege. As a consequence, the district court struck Ogden's entire testimony.

Lord's counsel also called Cook to the stand outside the presence of the jury to determine whether Cook was willing to testify about the drug transactions. Cook indicated that he had discussed his potential criminal liability with the prosecutor and said, "He told me that my part in this was so minor that he really didn't want to prosecute me, but he would, depending on my testimony."

Following defense counsel's request for clarification, the prosecutor asked Cook, "Do you remember being advised that while you might incriminate yourself in your testimony, that I wasn't interested in prosecuting you if you were truthful, if you would submit to an interview, if you would testify fully and truthfully, do you remember that?" Cook replied, "Not in those words exactly, no." Defense counsel requested that the court interpret the prosecutor's remarks to Cook as a grant of immunity and require Cook to testify despite his claim of privilege. The district court refused to do so, and Cook testified no further. The jury convicted Lord on all counts.

ANALYSIS

1. *Defense Witness Immunity*

■ Under 18 U.S.C. §§ 6002–6003, the prosecutor may secure immunity for a witness whose testimony "may be necessary to the public interest."[1] An immunized wit-

**1.** Section 6002 provides, in pertinent part:
[T]he witness may not refuse to comply with [an order issued under this part] on the basis of his privilege against self-incrimination; but no testimony or other information com-

pelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false

ness may not refuse to answer by asserting the fifth amendment privilege against self-incrimination. This immunity is referred to as "use immunity." *See, e.g., Weg v. United States,* 450 F.2d 340, 341 (9th Cir.1971), *cert. denied,* 406 U.S. 962, 92 S.Ct. 2057, 32 L.Ed.2d 349 (1972). Use immunity means that, while the government may prosecute the witness for an offense related to the subject matter of the witness's testimony, the testimony itself and any "fruits" thereof may not be used against the witness in any criminal case except a prosecution for perjury arising out of the testimony. *See, e.g., New Jersey v. Portash,* 440 U.S. 450, 451–52, 99 S.Ct. 1292, 1293–94, 59 L.Ed.2d 501 (1979).

Section 6003, which authorizes prosecutors to request an order granting use immunity, is generally employed only for government witnesses. However, in recent years courts have recognized that, under certain circumstances, such as where the refusal to testify is occasioned by prosecutorial misconduct, use immunity for defense witnesses is necessary to protect and enforce a defendant's due process right to a fair trial. *See generally* Comment, *Defense Witness Immunity and the Right to a Fair Trial,* 129 U.Pa.L.Rev. 377 (1980).

The Third Circuit has developed a rule for granting defense witnesses use immunity when required by due process. The rule emerged in *United States v. Morrison,* 535 F.2d 223 (3d Cir.1976). In *Morrison* the defendant's girl friend planned to testify that she, rather than the defendant, had participated in a conspiracy to sell hashish. Originally the girl friend was indicted with the defendant, but charges were dropped because she was a juvenile at the time of the alleged offense. After the prosecutor learned of the girl friend's intention to tes-

tify, he warned her repeatedly that she could be prosecuted for the drug charges and for perjury if she testified for the defendant. The Third Circuit held that the prosecutor's intimidation of the witness, designed to induce her to assert the fifth amendment privilege against self-incrimination, violated the defendant's right to compulsory process and, hence, the defendant's right to due process. *Id.* at 228. The court ordered a new trial and indicated that, if the government did not request use immunity for the defense witness pursuant to 18 U.S.C. §§ 6002 & 6003, a judgment of acquittal should be entered. *Id.* at 229.

In *United States v. Herman,* 589 F.2d 1191 (3d Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), the Third Circuit enunciated the showing required to justify compelling the government to grant use immunity to a defense witness or suffer judgment of acquittal. It held that "[t]he defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process." *Id.* at 1204.

The *Herman* court did not order immunity because no evidence of prosecutorial misconduct appeared there. The first application of the *Herman* standard occurred in *Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980). In *Smith* the court determined that the record revealed a prima facie showing of prosecutorial misconduct. There the local juvenile authorities had exclusive jurisdiction over an essential defense witness. Although the local authorities agreed to immunize the witnesses, they made the offer of immunity contingent on the consent of the United States Attorney, the official entrusted with statutory authority to make such a grant. For reasons

statement, or otherwise failing to comply with the order.

Section 6003 provides, in pertinent part:

(a) [T]he United States district court ... shall issue ... upon the request of the United States attorney ... an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination ....

(b) A United States attorney may ... request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

unexplained either at trial or on appeal, the federal prosecutor refused to consent, and the potentially exculpatory testimony was not presented to the jury. The Third Circuit ordered the district court to hold an evidentiary hearing to determine whether the defense witness's testimony would be relevant to the defendant's case and whether the federal prosecutor, in refusing to consent to extending immunity to the defense witness, acted with a deliberate intention of distorting the fact-finding process. *Id.* at 969. If the district court found that prosecutorial misconduct had prevented the defense witness from giving relevant testimony, then the court was directed to acquit the defendant unless the prosecutor granted use immunity to the defense witness.[2]

■ Upon reviewing the record in the instant case, we conclude that Lord has made a prima facie showing of the relevance of Joe Cook's testimony. Cook, if allowed to testify, might corroborate Lord's version of when he met Spaulding and who made the first overture for the sale of drugs. Cook also might testify that Spaulding and DEA agents harassed and threatened Lord in order to induce him to sell drugs. This testimony would be relevant to Lord's entrapment defense.

The record can also be read to suggest that prosecutorial misconduct caused Cook to invoke his fifth amendment privilege against self-incrimination. Cook testified that before trial the prosecutor told him that whether he would be prosecuted depended on his testimony. The prosecutor indicated that he told Cook about the self-incrimination privilege and that the government would not prosecute Cook if he submitted to an interview and testified truthfully. Without clarification, both of these versions could suggest distortion of the judicial fact-finding process. We believe that protection of the defendant's due process right to a fair trial warrants further clarification of the prosecutor's pre-trial comments to Cook.

We agree with the Third Circuit's holding in *Virgin Islands v. Smith, id.* at 968, that an unrebutted prima facie showing of prosecutorial misconduct that could have prevented a defense witness from giving relevant testimony justifies remand for an evidentiary hearing. Therefore, we reverse and remand this case for an evidentiary hearing on whether the prosecutor intentionally distorted the fact-finding process by deliberately causing Cook to invoke his fifth amendment privilege. If the district court finds such prosecutorial misconduct by a preponderance of the evidence,[3] it should enter a judgment of acquittal for Lord unless the prosecution invokes 18

---

2. The court also invoked an alternative theory of defense witness immunity, which it called "judicial immunity." The court stated that "[t]he need for 'judicial' immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case." 615 F.2d at 969. Since the facts of the instant case differ from those in *Smith,* where the defense witness's testimony clearly would have exonerated the defendant, we do not address this alternative theory.

3. Frequently, when a claim affecting the defendant's constitutional rights arises in a criminal case, the proponent must carry his or her burden of proof by a preponderance of the evidence. *E.g., United States v. Flores,* 679 F.2d 173, 176 (9th Cir.1982) (defendant must show perjury in the affidavit supplying probable cause for a search warrant by a preponderance of the evidence), *cert. denied,* —— U.S. ——, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983); *United States v. Glover,* 596 F.2d 857, 865 (9th Cir.1979) (prosecution must show knowing and voluntary waiver of *Miranda* rights by a preponderance of the evidence), *cert. denied,* 444 U.S. 857, 100 S.Ct. 117, 62 L.Ed.2d 76 (1979); *Farrow v. United States,* 580 F.2d 1339, 1355 (9th Cir.1978) (defendant must show constitutional violations justifying habeas corpus by a preponderance of the evidence); *United States v. Choate,* 576 F.2d 165, 171 (9th Cir.1978) (prosecution must show that illegal activities did not taint evidence by a preponderance of the evidence), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *United States v. Cales,* 493 F.2d 1215, 1216 (9th Cir. 1974) (same); *United States v. O'Looney,* 544 F.2d 385, 388 (9th Cir.) (prosecution must show a voluntary consent to a search by a preponderance of the evidence), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). We believe, therefore, that proof by a preponderance of the evidence is the appropriate burden in the instant case.

U.S.C. §§ 6002–6003 by asking the district court to extend use immunity to Cook at a new trial.

In previous cases we have held that the defendant does not have an absolute right to witness immunity. *See United States v. Garner,* 663 F.2d 834, 839–40 (9th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982); *United States v. Carman,* 577 F.2d 556, 561 (9th Cir.1977); *United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). In none of these cases, however, did the facts show the possibility of prosecutorial misconduct. As we indicated in these cases, the key issue in the analysis of defense use immunity is whether the defendant was denied a fair trial. *See, e.g., United States v. Carman,* 577 F.2d at 561. We believe that Lord was denied a fair trial when the district court refused to determine whether the prosecutor had deliberately caused Cook to refuse to testify. Therefore, our holding here comports with the holdings of *Garner, Carman,* and *Alessio.*

2. *Other Assignments of Error*

■ Lord argues that the district court erred in striking all of defense witness Odgen's testimony after she asserted her fifth amendment privilege. When a witness refuses to answer questions based on fifth amendment privilege, striking the witness's entire testimony is an extreme sanction. *United States v. Seifert,* 648 F.2d 557, 561 (9th Cir.1980). A trial judge may apply this sanction only when the question asked pertains to matters directly affecting the witness's testimony; the judge may not use the sanction when the privileged answer pertains to a collateral matter. *Id.* at 561–62; *United States v. Williams,* 626 F.2d 697, 702 (9th Cir.), *cert. denied,* 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980).

■ We believe that the prosecutor's request that Ogden name suppliers of cocaine involved a collateral matter. She testified about Spaulding's credibility and pattern of behavior in seeking cocaine. Specific names of suppliers do not pertain directly to

that testimony. Thus, the district court erred in striking all of Ogden's testimony. Nevertheless, we consider the error to be harmless. Several other defense witnesses testified to similar activities by Spaulding. Since the error did not affect Lord's substantial rights, it does not require reversal. *See* Fed.R.Crim.P. 52(a).

■ Lord also argues that the district judge made certain evidentiary rulings and gave certain jury instructions that constitute reversible error. For example, he contends that the district court erred in excluding expert psychiatric testimony on Lord's unusual susceptibility to inducement. Upon reviewing the record, we conclude that the district court did not abuse its discretion by excluding the expert testimony. *See United States v. Benveniste,* 564 F.2d 335, 339 (9th Cir.1977).

■ Lord also objects to a jury instruction about intent. He contends that the statement, "It is ordinarily reasonable to assume that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted," is defective under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). However, the instruction held improper in *Sandstrom* stated that "the law *presumes* that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513, 99 S.Ct. at 2453 (emphasis added). In *United States v. Mayo,* 646 F.2d 369, 375 (9th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981), we sustained an instruction substantially similar to the one given in the instant case. Thus, we find no error in the instruction given here.

After reviewing Lord's remaining challenges, we conclude that if errors occurred, whether viewed individually or cumulatively, they were harmless.

CONCLUSION

Based on the above analysis, we vacate Lord's conviction and remand the matter to the district court for an evidentiary hearing. If the district court finds that prosecutorial misconduct prevented defense witness Cook from giving relevant testimony,

then the court should enter a judgment of acquittal for Lord unless the prosecution requests use immunity for Cook at a new trial.

Affirmed in part; judgment vacated and remanded.