**UNITED STATES of America, Plaintiff,**

v.

**Edward Gordon WESTERDAHL, Defendant.**

**Crim. No. 87–293–PA.**

United States District Court, D. Oregon.

Dec. 21, 1989.

Charles H. Turner, U.S. Atty., and Fredric N. Weinhouse, Asst. U.S. Atty., Portland, Or., for U.S.

Steven T. Wax, Federal Public Defender, Portland, Or., for defendant.

## OPINION

PANNER, Chief Judge.

Defendant Edward Westerdahl was convicted of armed bank robbery and unlawfully carrying a firearm during the commission of a violent crime during a three-day jury trial ending November 16, 1989. Prior to trial, he moved for alternative remedies to redress the government's failure to preserve the getaway car used in the robbery, contending that the car was the source of potentially exculpatory evidence. Specifically, he sought either (1) an order precluding the government from using any evidence obtained from the car but permitting him to use whatever of this evidence he wished; or (2) complete suppression of any such evidence. I ordered complete suppression. Westerdahl also moved for a grant of immunity to Arthur Goldsberry with respect to Goldsberry's prospective testimony about his involvement, if any, in the robbery. I denied this motion.

I now explain both rulings.

## BACKGROUND

On March 12, 1987, two men robbed a bank in Portland, Oregon and fled in a stolen car, a Volkswagen Quantum ("VW"). As they were fleeing, Washington County Deputy Leonard Smith fired five shots at the VW, fatally injuring the passenger, Gary Hottman. Deputy Smith stated he thought he had shot both the driver and the passenger because the driver appeared to be somewhat limited in the use of his right arm. He reported that it appeared the driver had little mobility in his right shoulder and experienced difficulty in getting the car into gear. At a hearing, Deputy Smith testified that the driver reached across with his left hand to start the VW.

Two different forensic experts conducted independent examinations of the VW,

which had been abandoned in a hospital parking lot. Neither was informed that Deputy Smith thought he had shot the driver and neither took samples from those areas of the car where the driver would have been likely to shed blood. All of the blood samples taken and tested were consistent with Hottman's blood.

The Federal Bureau of Investigation ("FBI") impounded the VW and two other cars. Under threats of legal action from an insurance company, the FBI returned the VW to its original owner, who refurbished the car and sold it. As of August 26, 1988, the FBI still held the other two cars.

The grand jury returned an indictment against Westerdahl in December 1987. The indictment charged that Westerdahl had been the driver of the VW during the getaway. Westerdahl moved to dismiss the indictment, arguing that his opportunity to present a complete defense had been jeopardized by the government's failure to preserve potentially exculpatory evidence. He contended that the government prejudiced his right to due process by failing either to obtain blood samples from the driver's side of the car or to allow him to run independent tests on the VW. I granted Westerdahl's motion to dismiss. The government appealed. After the decision of the Supreme Court in *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), I requested remand for reconsideration. The Ninth Circuit remanded, 879 F.2d 866, and I reinstated the indictment.

### STANDARDS

I. Westerdahl's Motion for Alternative Remedies

The government's failure to preserve potentially exculpatory evidence violates a defendant's right to due process only if the government acts in bad faith. *Youngblood,* 109 S.Ct. at 337. If defendant makes such a showing, the court must either bar further prosecution or suppress the State's most probative evidence. *California v. Trombetta,* 467 U.S. 479, 487, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984).

When the government's conduct is at worst negligent, however, a defendant is not denied due process. *Youngblood,* 109 S.Ct. at 338.

Even if the government's loss or destruction of evidence falls short of violating a defendant's constitutional rights, a court may still order suppression or other protective rulings or sanctions. *United States v. Loud Hawk,* 628 F.2d 1139, 1152, 1153 (9th Cir.1979) (en banc), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). In determining whether protective rulings or sanctions are appropriate, a court must weigh the quality of the government's conduct and the degree of prejudice to the accused. *United States v. Roberts,* 779 F.2d 565, 569 (9th Cir.), *cert. denied,* 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986); *Loud Hawk,* 628 F.2d at 1152. "The Government bears the burden of justifying its conduct and the defendant bears the burden of demonstrating prejudice." *Loud Hawk,* 628 F.2d at 1152.

In assessing the conduct of the government, the following factors are to be examined: (1) whether the evidence was lost or destroyed while in the government's custody; (2) whether the government acted in disregard for the interests of the accused; (3) whether the government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions; (4) if the acts leading to the destruction of evidence were deliberate, whether they were taken in good faith or with reasonable justification; (5) whether and to what degree federal officers were involved; and (6) whether the government attorneys prosecuting the case participated in the events leading to loss or destruction of the evidence. *Id.*

In evaluating the degree of prejudice to defendant, some of the factors to be examined include: (1) the centrality of the lost or destroyed evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; (2) the probative value and reliability of the secondary or substitute evidence; (3) the nature and probable weight of factual inferences or other demonstrations and

kinds of proof allegedly lost to the accused; and (4) the probable effect on the jury from absence of the evidence. *Id.*

The government argues that the Ninth Circuit has amended the *Loud Hawk* multi-factor balancing standard. It contends that to obtain suppression a defendant now must establish (1) bad faith or connivance on the part of the government and (2) actual prejudice suffered by the defendant as a result of the loss or destruction of evidence, relying upon *United States v. Jennell,* 749 F.2d 1302, 1309 (9th Cir.1984), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985).

But *Jennell* is not controlling for at least three reasons. First, the court has quoted the "original" *Loud Hawk* balancing standard in cases decided subsequent to *Jennell. See, e.g., United States v. Weinstein,* 834 F.2d 1454, 1462–63 (9th Cir. 1987); *Roberts,* 779 F.2d at 569. Second, the procedural ruling being challenged in *Jennell* was not the denial of a motion to suppress, but rather was the refusal to give a lost evidence jury instruction. Finally, while it cited *Loud Hawk* in support of the standard it announced, the panel in *Jennell* nonetheless cited to a portion of *Loud Hawk* supported by only one of the eleven judges hearing the en banc appeal. *Loud Hawk,* 628 F.2d at 1141, 1146–49. While Judge Trask wrote what was otherwise the majority opinion, the six judges who joined in his opinion did so only as to sections I, II, III, and VI. In sections IV and V of his opinion in *Loud Hawk,* Judge Trask laid down the two-prong test to which the *Jennell* court cites. On these sections, Judge Trask stood alone. Consequently, I will follow *Loud Hawk* and its progeny.

## II. Westerdahl's Motion for Immunity

The government's refusal to grant immunity to a defense witness can violate a defendant's right to a fair trial under the due process clause. *Jeffers v. Ricketts,* 832 F.2d 476, 479 (9th Cir.1987), *cert. granted,* —— U.S. ——, 110 S.Ct. 232, 107 L.Ed.2d 183 (1989). To establish that such a violation has occurred, defendant must show by a preponderance of the evidence that the government acted with the deliberate intention of distorting the fact-finding process. *United States v. Lord,* 711 F.2d 887, 891 (9th Cir.1983). If defendant makes such a showing of prosecutorial misconduct, he is entitled to a judgment of acquittal unless the prosecution then agrees to grant the immunity defendant seeks. *United States v. Patterson,* 819 F.2d 1495, 1506 (9th Cir. 1987); *Lord,* 711 F.2d at 891–92.

An evidentiary hearing is warranted if defendant makes an unrebutted prima facie showing that (1) the testimony the defense witness was prepared to give is relevant and (2) the prosecution engaged in misconduct that could have prevented the witness from providing such relevant testimony. *Lord,* 711 F.2d at 891; *see also Jeffers,* 832 F.2d at 479. A defendant makes a prima facie showing of the second element by proffering enough evidence of pretrial communications between the witness and the government that further investigation is necessary to determine whether improper pressure was placed on the witness. *Lord,* 711 F.2d at 891.

## DISCUSSION

### I. Westerdahl's Motion for Alternative Remedies

■ I deny Westerdahl's motion to preclude only the government from using evidence obtained from the getaway car. I find no cases in which such a remedy was granted.

■ I turn now to an evaluation of the remedy of complete suppression. Upon examination, five of the six factors to be analyzed in assessing the conduct of the government under *Loud Hawk* cut in favor of suppression. First, the government had custody of the VW when the car was returned to its owner. Second, the government was aware of the VW's potentially exculpatory value before it released the car and thus acted without regard for Westerdahl's interests. Third, the government was negligent in returning the VW without first preserving the potentially exculpatory evidence. Fourth, the government's acts

were not taken in bad faith, but neither were they reasonably justified.[1] Fifth, federal officers were primarily if not exclusively responsible for the failure to preserve. It was the FBI that returned the VW to its original owner. Finally, on the other hand, the government attorney prosecuting this case had nothing to do with returning the VW.

Westerdahl was prejudiced by the government's failure to preserve the car. Such prejudice may be inferred from my earlier finding that the lost evidence denied Westerdahl the opportunity to present a complete defense. In addition, such evidence goes to the central issue of whether Westerdahl was the driver of the getaway car. More and better blood samples from the VW might have established a second source of blood inconsistent with Westerdahl's.

In weighing the propriety of the government's conduct against the degree of potential prejudice to Westerdahl, the scales tip decidedly in Westerdahl's favor. I grant Westerdahl's motion to suppress insofar as it seeks to exclude all evidence obtained from the VW.

## II. Westerdahl's Motion for Immunity

By affidavit, counsel for Westerdahl asserts that Goldsberry was prepared to testify that Westerdahl did not commit the bank robbery in which Hottman was shot and that Goldsberry committed other robberies with Hottman in 1987. Counsel asserts further that when he asked Goldsberry whether he was involved in the robbery for which Westerdahl was convicted, Goldsberry invoked his privilege against self-incrimination. Counsel for Westerdahl then asked the government to provide immunity to Goldsberry. The government refused.

■ I will assume that Goldsberry's testimony would have been relevant. If there is sufficient evidence of prosecutorial misconduct, Westerdahl is entitled to an evidentiary hearing. Westerdahl contends it

is enough that the government gave formal immunity to one of its witnesses and promised not to prosecute another while refusing to grant immunity to Goldsberry. Absent some taint of misconduct, the executive's exercise of its prerogative to provide immunity for its own witnesses while declining to use it on behalf of potential defense witnesses does not deprive a defendant of due process. *United States v. Alessio*, 528 F.2d 1079, 1081–82 (9th Cir.1976).

■ Westerdahl contends alternatively that the court should grant his motion under the theory of "judicial immunity." *See Government of Virgin Islands v. Smith*, 615 F.2d 964, 969 (3d Cir.1980). This theory posits that the court itself may grant immunity if defendant is prevented from presenting exculpatory testimony crucial to his case. *Id.* The court ostensibly derives its authority not from any statute, but rather from its inherent power to "effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense." *United States v. Herman*, 589 F.2d 1191, 1204 (3d Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). Only the Third Circuit has embraced the concept. *See United States v. Capozzi*, 883 F.2d 608, 614 (8th Cir.1989) (noting that each of the four courts of appeals that has directly addressed the Third Circuit's approach to judicial immunity in *Smith* has rejected it "as being a violation of the doctrine of separation of powers").

The Ninth Circuit referred to the notion of judicial immunity espoused in *Smith*, but declined to address it directly. *Lord*, 711 F.2d at 891 n. 2. Nonetheless, its pronouncements in other opinions reveal that it does not view the judiciary as possessing inherent authority to grant immunity. *See, e.g., United States v. Mendia*, 731 F.2d 1412, 1414 (9th Cir.) ("a district court has neither the power to grant use immuni-

---

**1.** The fourth *Loud Hawk* factor asks whether the government acted in good faith *or* with reasonable justification. *Loud Hawk*, 628 F.2d at 1152. Thus, because the government's acts

were not reasonably justified, I need not address the issue of whether they were taken in good faith.

ty to individuals whom the defendant seeks to call as witnesses, nor the power to force the government to grant such immunity"), *cert. denied,* 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984); *Alessio,* 528 F.2d at 1082 ("[t]o interpret the Fifth and Sixth Amendments as conferring on the defendant the power to demand immunity for co-defendants, potential co-defendants or others whom the government might in its discretion wish to prosecute would unacceptably alter the historic role of the Executive Branch in criminal prosecutions"); *see also Pillsbury Co. v. Conboy,* 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983) (in construing federal immunity statute, Court stating in dictum that "[n]o court has authority to immunize a witness").[2] Thus, I decline Westerdahl's invitation to embrace judicial immunity.

Westerdahl does not suggest the government sought to inhibit Goldsberry in any way from testifying or otherwise engaged in any other kind of malfeasance aimed at distorting the fact-finding process. He is not entitled to an evidentiary hearing on the government's conduct. I deny his motion for immunity.

### CONCLUSION

I grant Westerdahl's motion to suppress insofar as it seeks to exclude all evidence from the VW. I deny Westerdahl's motion seeking immunity for Goldsberry.

---

**2.** *But cf. Rules for Court–Martial* 704(e) (1984) (authorizing judge either to grant use immunity to a defense witness or to abate proceedings for time to find an alternate remedy). See also P.

Tague, *The Fifth Amendment: If an Aid to the Guilty Defendant, an Impediment to the Innocent One,* 78 Geo.L.J. 1, 3–4 & nn. 13–14 (1984).