10 F.3d 808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin FUQUA, Petitioner-Appellant,
v.
James ROWLAND, Defendant-Appellee.
 No. 93-15049.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 30, 1993.*
Decided Nov. 15, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges, and BELLONI, Senior District Judge**
 
 
 2
 MEMORANDUM***
 
 
 3
 Petitioner, Kevin Fuqua, appeals a district court judgment dismissing his petition for a writ of habeas corpus. Following a trial in Sacramento County Superior Court in 1988, petitioner was convicted on charges of murder and personal use of a firearm. He contends that he was denied a fair trial based on the prosecution's refusal to grant use immunity to a witness whose testimony was potentially exculpatory. We affirm the judgment of the district court.
 
 FACTS AND PROCEDURAL HISTORY
 
 4
 I. The murder conviction.
 
 
 5
 On May 5, 1987, at approximately 12:14 a.m., officers of the Sacramento Police Department discovered the body of Louis Franks, Jr. in the parking lot of the American River Village Apartments in Sacramento, California. An autopsy revealed that the cause of Franks's death was multiple gunshot wounds. Forensic analysis indicated that the bullets taken from the body were probably fired from the same weapon, a .32 caliber handgun.
 
 
 6
 Alberta McGhee was at the apartment complex at the time of the shooting. She testified that she knew petitioner, who went by the nickname "Nephew," and that she was also acquainted with Franks. Shortly before the shooting, McGhee had been talking with petitioner outside the apartment of Frankie Oates. She observed that petitioner was wearing a knee-length, green trench coat. A short while later, after McGhee had left the area of Oates's apartment, she heard shots fired. She looked up to see a person in a knee-length, green trench coat running through the complex.
 
 
 7
 Lolita Davis was also a resident of the apartment complex. She testified that, in the early morning hours of May 5, 1987, she saw two individuals talking near one of the apartments. One of them was wearing a knee-length coat. She later heard three or four shots fired from the parking lot. Shortly after the shots were fired, she observed two people running out of the complex. Davis thought that they were the same people she had seen talking earlier, but was unable to identify them.
 
 
 8
 There is evidence that the shooting was witnessed by Alberta McGhee's 12-year-old niece, Yolanda Lee. At a preliminary hearing held on September 1, 1987, Lee testified that she had seen petitioner, whom she identified as "Nephew," shoot Franks as she looked through the fence in her back yard. From her position, about sixteen feet from the scene of the shooting, she observed that petitioner was wearing a green trench coat. After the shots were fired, Lee ran to the other side of the building and saw petitioner and another individual running down the street. According to Lee, everyone in the apartment complex knew that Franks was going to be killed, but she did not expect petitioner to be the killer. On September 14, 1987, petitioner was charged by information in Sacramento County Superior Court with one count of murder, in violation of Cal.Pen.Code Sec. 187, and one count of personal use of a firearm in connection with the offense, in violation of Cal.Pen.Code Sec. 12022.5. On September 15, 1987, he was arraigned and entered a plea of not guilty. Petitioner's trial was scheduled to commence on January 21, 1988.
 
 
 9
 Sometime before the trial began, Yolanda Lee talked with the prosecutor, Timothy Frawley, and recanted her preliminary hearing testimony in which she had identified petitioner as the killer. Consequently, on the first day of trial, the court granted petitioner's motion to have the information set aside under Cal.Pen.Code Sec. 995 and remanded the case to Municipal Court for a second preliminary hearing.[1]
 
 
 10
 The second preliminary hearing was held on January 27 and 29, 1988. Yolanda Lee did not testify. At the conclusion of the hearing, petitioner was held to answer the charges against him. On February 11, 1988, he was arraigned on the information and again entered a plea of not guilty.
 
 
 11
 The second trial commenced on March 21, 1988. Petitioner's counsel moved that the prosecutor, G. Patrick Marlette, be required to make an offer of proof to support his belief that Yolanda Lee's initial testimony was truthful, while her recantation was fabricated. After argument on the motion, the court concluded that it was permissible for Marlette to call Lee as a witness and impeach her, if necessary, with her earlier testimony. The court then appointed an attorney, Jan Karowsky, to represent Lee. On the advice of Karowsky, Lee invoked her Fifth Amendment right to refuse to testify on the grounds that her testimony might subject her to prosecution for perjury.
 
 
 12
 The court sustained Lee's assertion of privilege and further found that her refusal to testify rendered her unavailable as a witness within the meaning of the California Evidence Code.[2] Petitioner's counsel then moved that Lee be granted use immunity for her testimony, but the motion was denied. Thereafter, the court permitted Marlette to introduce into evidence Lee's testimony from the September 1, 1987, preliminary hearing. Following the introduction of this evidence, the court advised the jury that Lee had recanted her preliminary hearing testimony on two prior occasions.
 
 
 13
 The final witness called by the defense was prosecutor Marlette. He testified that Lee had recanted her earlier testimony and no longer maintained that she had seen petitioner shoot Franks. At the close of evidence, petitioner's counsel moved to strike evidence of Lee's preliminary hearing testimony or, in the alternative, for a mistrial. Both motions were denied. On April 7, 1988, the jury found appellant guilty of murder in the first degree with use of a firearm. On June 17, 1988, he was sentenced to a term of imprisonment of 27 years to life, less 518 days' credit for time served.
 
 
 14
 II. The California appeals.
 
 
 15
 On July 8, 1988, petitioner appealed the trial court's rulings to the California Court of Appeal, Third Appellate District, asserting the same arguments later raised in his habeas petition. On March 5, 1990, the court issued its decision affirming petitioner's conviction. On June 21, 1990, the California Supreme Court denied review of the Court of Appeal's decision.
 
 
 16
 III. Federal habeas proceedings.
 
 
 17
 On August 16, 1990, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of California. Petitioner alleged that the trial court committed prejudicial error when it refused to grant Yolanda Lee use immunity for her trial testimony and then allowed the prosecution to introduce her preliminary hearing testimony into evidence. The court gave petitioner leave to depose Lee.
 
 
 18
 At her deposition, Lee testified that her decision to invoke her Fifth Amendment privilege was based on the advice of her court-appointed counsel, Karowsky. She further stated, "I was willing to testify even if I was going to jail, because I was willing to testify, regardless." (Deposition of Lee, submitted as EOR, p. xii.) Lee also testified that she was advised by both prosecutors (Frawley and Marlette), petitioner's counsel, and Karowsky that she could be jailed for perjury if she recanted her preliminary hearing testimony at the trial. See id. at ix, xi, and xv.
 
 
 19
 Following the deposition of Lee, respondent filed a motion for summary judgment. It argued that the trial court's refusal to grant immunity to Lee neither violated petitioner's constitutional rights nor prejudiced his case. On September 15, 1992, Magistrate Judge John F. Moulds filed his Findings and Recommendations in which he recommended that the district court grant respondent's summary judgment motion and dismiss the habeas petition. United States District Judge Edward J. Garcia issued an order adopting the Magistrate Judge's recommendation on October 26, 1992. A judgment dismissing the case was entered on the same day. The instant appeal followed.
 
 STANDARD OF REVIEW
 
 20
 I. Summary judgment.
 
 
 21
 A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., Co., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractor's Ass'n., 809 F.2d 626, 629 (9th Cir.1987). The appellate court's review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. F.D.I.C. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992); Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. O'Melveny, 969 F.2d at 747.
 
 
 22
 II. Habeas corpus.
 
 
 23
 The writ of habeas corpus is an extraordinary remedy, "a bulwark against convictions that violate 'fundamental fairness.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1719 (1993) (citations omitted). "[H]abeas petitioners ... are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " Id. at 1722 (citation omitted). The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc); United States v. Popoola, 881 F.2d 811, 812 (9th Cir.1989). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). In reviewing a district court's grant or denial of a habeas corpus petition, state court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d), unless it appears that the state court proceeding was flawed for one of the reasons set forth at Sec. 2254(d)(1)-(7). Sumner v. Mata, 449 U.S. 539, 550 (1981). This presumption does not attach, however, to a state court's resolution of mixed questions of fact and law. Hamilton v. Vasquez, 882 F.2d 1469, 1471 (9th Cir.1989).
 
 DISCUSSION
 
 24
 Petitioner contends that the district court failed to recognize the existence of a factual dispute which, in his view, necessarily precluded dismissal of his habeas petition by summary judgment. Observing that respondent refused to grant use immunity for the testimony of Yolanda Lee, petitioner concludes that "there was a genuine issue of material fact as to whether the prosecution intentionally caused Yolanda Lee to invoke her Fifth Amendment privilege, thereby distorting the fact-finding process by admitting only her previous preliminary hearing testimony." (Opening Brief for Appellant, p. 6.)
 
 
 25
 We find no specific evidence that Lee's refusal to testify was attributable to the actions of the prosecutors, nor that the prosecution intentionally distorted the fact-finding process. We therefore reject petitioner's assignment of error.
 
 
 26
 Petitioner acknowledges that a criminal defendant has no absolute right to compel the government to grant immunity to a witness. See United States v. Patterson, 819 F.2d 1495, 1505 (9th Cir.1987). He correctly observes, however, that immunity must be granted to a defense witness "where the fact-finding process is intentionally distorted by prosecutorial misconduct, and the defendant is thereby denied a fair trial." United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir.1991) (citing United States v. Lord, 711 F.2d 887, 892 (9th Cir.1983)). The district court concluded that the evidence presented by petitioner was insufficient to establish that Yolanda Lee's refusal to testify was the result of prosecutorial misconduct. We agree with that determination.
 
 
 27
 Petitioner's principal argument is that Lee, an impressionable, 12-year old girl, was pressured into invoking the Fifth Amendment under respondent's threat of a perjury prosecution. He attempts to find support for this theory by focusing on the actions of the prosecutors during the state court proceedings. There is no need, however, to speculate about the reasons for Lee's assertion of the privilege. Lee testified at deposition that her decision not to testify was based on the advice of her court-appointed counsel, Karowsky. She further testified that, but for Karowsky's advice, she was prepared to take the stand and testify, even at the risk of perjuring herself. Finally, she stated that she was warned about the risks of presenting perjured testimony by all of the lawyers involved in the case, including Karowsky. Lee was 16 years old at the time of her deposition. Her testimony is reliable evidence of her reasons for refusing to testify at the trial. That evidence is at odds with the conjectural explanation of Lee's conduct offered by petitioner. Under the circumstances, we find no probative evidence that Lee's reliance on the Fifth Amendment was caused by the actions of prosecutors Frawley and Marlette.
 
 
 28
 In addition, there is no evidence that the prosecution's refusal to grant Lee immunity interfered with the jury's ability to ascertain the facts of the case. The jury was informed by the trial court that Lee had retracted her earlier identification of petitioner as Franks's killer. In addition, when prosecutor Marlette took the stand at the conclusion of petitioner's case, he testified that Lee had told him that her preliminary hearing testimony was false. The jury was therefore aware that Lee had disavowed her previous testimony. In the absence of any evidence to the contrary, we must conclude that the jury fully considered the information presented at trial and accorded Lee's preliminary hearing testimony the weight it deserved.[3]
 
 
 29
 This case is distinguishable from those cases where we have found that prosecution tactics resulted in the unavailability of key witnesses or otherwise distorted the fact-finding process. In Westerdahl, for example, the government granted immunity to prosecution witnesses, but denied immunity to a defense witness who was in a position to offer rebuttal testimony. We concluded that the use of such immunized testimony in a situation where the defendant had no effective opportunity to present relevant, potentially exculpatory evidence "may have distorted the fact-finding process, and an evidentiary hearing should have been held...." Westerdahl, 945 F.2d at 1087. In Lord, a defense witness declined to testify after a meeting with the prosecutor at which the Fifth Amendment privilege and the possibility of a criminal prosecution were discussed. We held that the trial court erred when it failed to conduct an evidentiary hearing to determine whether the prosecutor's comments resulted in the witness's unavailability. Lord, 711 F.2d at 891-92.
 
 
 30
 The situation we now consider is quite different. In contrast to Westerdahl, the government's case against petitioner was not built on immunized testimony, nor did the denial of immunity to Lee mean that the jury was presented with only the prosecution's version of the facts. Unlike Lord, there is no evidence that the trial court failed to conduct an adequate hearing to determine the propriety of Lee's assertion of privilege. Instead, this case more closely resembles United States v. Montoya, 945 F.2d 1068 (9th Cir.1991), in which we rejected for lack of proof the defendant's claim that the prosecution's refusal to immunize a defense witness resulted in a due process violation. Like his counterpart in Montoya, petitioner has failed to establish "that the Government's decision not to grant ... immunity was due to ... prosecutorial misconduct...." Id. at 1078.
 
 
 31
 Based on the foregoing, we agree with the determination of the district court. Petitioner's contention that Yolanda Lee's refusal to testify was caused by prosecutorial misconduct is based largely on conjecture and is not supported by specific facts as required by Fed.R.Civ.P. 56(e). Accordingly, respondent is entitled to summary judgment. The habeas petition was properly dismissed.
 
 CONCLUSION
 
 32
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Robert C. Belloni, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Cal.Pen.Code Sec. 995 provides that an indictment or information may be set aside where it has not been entered in compliance with proper procedures or where reasonable or probable cause is not found
 
 
 [2]
 Following Lee's assertion of the privilege, the court conducted a hearing pursuant to Cal.Evid.Code Sec. 405 in order to assess whether her reliance on the Fifth Amendment rendered her unavailable as a witness. At the hearing, Lee again refused to answer questions concerning her preliminary hearing testimony on the grounds that her answers might incriminate her
 
 
 [3]
 We further observe that, even if Lee had been granted use immunity for her trial testimony, her preliminary hearing testimony would have reached the jury in the form of impeachment evidence. This consideration further supports our conclusion that the prosecution's refusal to grant immunity to Lee had no material impact on the fact-finding process