95 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose NAVARRETE, Defendant-Appellant.
 No. 95-30195.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 10, 1996.
Decided Aug. 13, 1996.
 
 Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jose Navarrete appeals his conviction and sentence. The parties are familiar with the facts. We affirm.
 
 
 3
 I. Government Interference With Potential Defense Witness
 
 
 4
 Navarrete contends that government intimidation caused Valdez-Rivero to change his story about Navarrete's knowledge of the contents of the Express Mail Package. Without such intimidation, Navarette argues, Valdez-Rivero would have testified that Navarrete did not know the package contained cocaine.
 
 
 5
 Navarrete must demonstrate misconduct by a preponderance of the evidence. United States v. Lord, 711 F.2d 887, 891 n. 3 (1983). We review for clear error the district court's finding that there was no misconduct or intimidation. United States v. Baker, 10 F.3d 1374, 1415 (9th Cir.1993).
 
 
 6
 "[S]ubstantial government interference with a defense witness's free and unhampered choice to testify" violates due process. United States v. Little, 753 F.2d 1420, 1438 (9th Cir.1984). It is undisputed that Agent Baker warned Valdez-Rivero about the penalties for testifying untruthfully. See RST 9, 27, 33-34. The record also indicates that Agent Baker informed Valdez-Rivero that Navarrete probably wanted him to testify on Navarrete's behalf. RST 8. Baker further suggested that Navarrete might attempt to place the blame on Valdez-Rivero. RST 18. Finally, Baker cautioned Valdez-Rivero about testifying to anything about which the government was not already aware. RST 9. Such testimony, Baker warned, could be used against Valdez-Rivero in another prosecution, "be it perjury or whatever." Id.
 
 
 7
 The government contends that Agent Baker's statements did not constitute intimidation. It is true that courts have unanimously held that trial judges and prosecutors may warn defense witnesses about the penalties for perjury, as long as the warning is not intimidating or threatening. See, e.g., Webb v. Texas, 409 U.S. 95, 97 (1972) (trial judge); United States v. Smith, 997 F.2d 674, 679-80 (10th Cir.1993) (trial judge); United States v. Jackson, 935 F.2d 832, 846-47 (7th Cir.1991) (prosecutor); United States v. Simmons, 694 F.2d 1325, 1334-35 (D.C.Cir.1982) (trial judge); United States v. Harlin, 539 F.2d 679, 681 (9th Cir.1976) (trial judge). But here the warning was made by a law enforcement officer outside of court and without the presence of defense counsel for Navarette or Valdez-Rivero. Moreover, Baker's comments went beyond those that are ordinarily appropriate when advising a witness that he may face perjury charges if he fails to tell the truth. Baker purported to explain the defense's strategy for calling Valdez-Rivero, and implied that testimony about matters beyond the government's knowledge, even if truthful, could subject Valdez-Rivero to further charges. The government cites no cases condoning warnings of this kind.
 
 
 8
 Nevertheless, we cannot conclude that the district court was clearly wrong in finding no prejudicial error. It is undisputed that following the agents' visit, Valdez-Rivero's attorney explained, and Valdez-Rivero understood, that Valdez-Rivero "could get on the stand and testify truthfully and nothing would happen." RST 28, 40. By the time Valdez-Rivero's attorney told Navarrete's attorney that Valdez-Rivero would not provide helpful testimony about Navarrete's knowledge of the contents in the Express Mail package, Valdez-Rivero had been assured that his truthful testimony could not be used against him. Navarrete offers no solid evidence that Valdez-Rivero changed his story about Navarrete's knowledge after Agent Baker's visit. Even assuming that he did change his story, it is unlikely that the warnings from Agent Baker caused the change. Cf. United States v. Montoya, 945 F.2d 1068, 1078 (9th Cir.1991) (no evidence that defense witness' invocation of Fifth Amendment was due to prosecutorial misconduct); United States v. Smith, 44 F.3d 1259, 1269 (4th Cir.1995) (no evidence that defense witness' decision not to testify was related to alleged prosecutorial misconduct); United States v. Nixon, 777 F.2d 958, 972 (5th Cir.1985) (no due process violation where defense witness stated that his treatment by the government "had not altered his substantive testimony"). Moreover, and perhaps most important of all, the evidence of Navarrete's guilt of Count VI was overwhelming.
 
 
 9
 Our decision should not be interpreted as approving the government's conduct in this case. "It is imperative that prosecutors and other officials maintain a posture of strict neutrality when advising witnesses of their duties and rights. Their role as public servants and as protectors of the integrity of the judicial process permits nothing less." United States v. Rich, 580 F.2d 929, 934 (9th Cir.1978).
 
 II. Hearsay
 
 10
 We reject Navarrete's contention that the district court abused its discretion in admitting the testimony that an unknown caller asked, "Where is Nava?" Courts have unanimously held that a question is not hearsay because a question cannot be a statement offered to prove the truth of the matter asserted. See, e.g., United States v. Oguns, 921 F.2d 442, 449 (2d Cir.1990); United States v. Long, 905 F.2d 1572, 1579-80 (D.C.Cir.1990); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir.1990); United States v. Vest, 842 F.2d 1319, 1330 (1st Cir.1988). We consider these rulings unremarkable.
 
 III. Admissibility of Rule 404(b) Evidence
 
 11
 Navarrete's challenge to the admissibility of prior act testimony fails. If there was error, it was harmless. The evidence of Navarette's guilt on all four counts was overwhelming. See United States v. Medrano, 5 F.3d 1214, 1219 (9th Cir.1993); United States v. Bishop, 1 F.3d 910, 911 (9th Cir.1993).
 
 IV. Double Jeopardy
 
 12
 Navarrete's argument that the district court should have conducted further factfinding before concluding that the dual sovereignty doctrine permitted this federal prosecution is foreclosed by United States v. Ursery, 1996 WL 340815 (June 24, 1996).
 
 V. Enhancement for Possession of a Firearm
 
 13
 We reject Navarrete's argument that the prosecutor's decision to dismiss the § 924(c) charge makes improper an enhancement under U.S.S.G. § 2D1.1(b)(1). See United States v. Bailey, 116 S.Ct. 501, 509 (1995) (where there is no § 924(c) conviction, the sentencing court can still apply a firearm enhancement).
 
 
 14
 We also conclude that the district court did not clearly err in finding that the firearm was sufficiently connected to an offense for which Navarrete was convicted. At the time officers discovered the pistol above Navarrete's washing machine, they also found in his house the equipment for making crack cocaine. The jury acquitted Navarrete of possessing the cocaine, but the jury could still consider those drugs part of the conspiracy. The presence of the gun among such equipment supports a finding that it was possessed during an overt act of the conspiracy.
 
 
 15
 VI. Enhancement for Being an Organizer or Leader
 
 
 16
 Navarrete argues that the district court did not provide sufficient justification for an enhancement. But we have held that "the district court need not make specific findings of fact in support of an upward role adjustment" under § 3B1.1. United States v. Ponce, 51 F.3d 820, 826 (9th Cir.1995).
 
 
 17
 Navarrete further maintains that the government failed to demonstrate that a fifth person was "criminally responsible" for the commission of the offenses. See U.S.S.G. § 3B1.1, comment 1. We need not address this argument, for we conclude that Navarrete clearly acted as a manager in criminal activity, thereby warranting a two-level departure under § 3B1.1(c).[1] As Navarrete's counsel conceded at oral argument, the difference between a four-level and a two-level departure would not affect Navarrete's guideline range.
 
 VII. Length of Sentence
 
 18
 Navarrete argues that the district court acted vindictively in giving him a 384-month sentence for four counts when he received the same sentence in 1991 for pleading guilty to seven counts. See North Carolina v. Pearce, 395 U.S. 711 (1969). We find no evidence of vindictiveness in the record, and since Navarrete did not receive a "net increase in his punishment," we will not presume vindictiveness. United States v. Hagler, 709 F.2d 578, 579 (9th Cir.1983). Navarrete emphasizes that in 1991 the district court did not give a firearm enhancement and only gave a two level upward departure for his role in the offense. These facts do not show vindictiveness: the firearm enhancement was justified, and the additional two levels for his leadership role did not affect the sentencing range.
 
 VIII. Weight of Cocaine Base
 
 19
 Navarrete concedes that usually the government must prove a drug quantity at sentencing by a preponderance of the evidence. See United States v. Navaro, 979 F.2d 786, 788 (9th Cir.1992), but argues for a higher standard of proof in this case because of the severity of the sentence. We need not resolve the question. Even under a clear and convincing standard, the government's evidence is sufficient. The Drug Enforcement Agency's laboratory results, which the district court accepted, are uncontested. For this reason, we also reject Navarette's contention that the government violated his right to due process by relying on destroyed evidence.
 
 IX. Ineffective Assistance of Counsel
 
 20
 Navarrete contends that his trial attorney committed prejudicial error in failing to interview Valdez-Rivero before government agents visited him. As noted above, there is no evidence that Valdez-Rivero changed his story as a result of the agents' visit. Even if Navarrete's attorney had a duty to reach Valdez-Rivero before the government, the breach of that duty did not prejudice Navarrete.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Diedre Walker testified that Navarrete supplied her with crack for redistribution, and that she would split the profits with him. RT 320-23, 337. He also arranged for the Express Mail package containing 800 grams of crack to arrive at her house. RT 325-26