**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Jorge NEGRETE–GONZALES,**
**Defendant–Appellant.**

**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Rogelio MENDOZA–BARAJAS,**
**Defendant–Appellant.**

**Nos. 90–30306, 90–30318.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1992.

Decided June 2, 1992.

John A. Maxwell, Jr., Meyer, Fluegge & Tenney, for defendant-appellant Negrete–Gonzales.

Victor H. Lara, Kurtz, Hurley & Lara, Yakima, Wash., for defendant-appellant Mendoza–Barajas.

Gregory M. Shogren, Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Before: BROWNING, WRIGHT and FERNANDEZ, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The two defendants here may or may not have conspired to sell cocaine, but a trial rife with error denied them their fundamental right to make the government prove its case. The district court arbitrarily struck the testimony of the key defense witness, permitted the government's ill-advised inquiry into the defendants' post-arrest silence, and misinstructed the jury. We reverse and remand for a new trial, with the expectation that these errors will be corrected.

## I

The two defendants, Rogelio Mendoza–Barajas (Mendoza) and Jorge Negrete–Gonzalez (Negrete), were arrested together with Maria Medina–Barajas (Medina) following an undercover drug investigation. Medina pleaded guilty, and a jury convicted Mendoza and Negrete following a joint trial.

The investigation started when Lopez, a confidential informant, told the DEA that he could arrange to buy cocaine from Medina. With the DEA's encouragement, he arranged a multi-kilogram transaction.

Medina met Lopez and undercover DEA agent Weeks at a grocery store parking lot. Medina arrived, driving Negrete's car, accompanied by Mendoza. At Medina's suggestion, Lopez and Weeks followed her to her home to complete the deal.

There, Mendoza, Medina and Lopez went inside while Weeks waited in the car. Once inside, Medina and Lopez entered a bedroom to inspect the cocaine. Mendoza stayed in the family room, watching television. Negrete was also present at the house.

After confirming that Medina had several kilograms of cocaine, Lopez returned to the car to tell Weeks. At some point Negrete approached Weeks as he waited in the car and suggested that Weeks come inside to complete the transaction. Weeks refused, telling Negrete that first he and Lopez had to call a third party to arrange for the money.

Negrete reentered the house and Weeks gave the arrest signal. Before the other agents arrived, Negrete reappeared in the yard. After agents identified themselves, Negrete pulled a pistol from his waistband and threw it into the bushes. There is conflicting testimony about whether he pointed the pistol at the police before he was arrested.

Agents arrested Medina after finding her hiding in the garage. They arrested Mendoza when they found him in the backyard standing near the place where the three kilograms of cocaine had been hidden. A Spanish-speaking agent took the defendants inside the house and advised them of their *Miranda* rights.

After obtaining a telephonic search warrant, agents searched the house and found additional cocaine, scales, another pistol and some ammunition.

A jury convicted the two defendants of conspiring to distribute cocaine, possession of cocaine with intent to distribute, and use of a firearm during a narcotics felony. The court sentenced Negrete to 168 months and Mendoza to 138 months. Both appeal their convictions. Mendoza also appeals his sentence.

## II

A. Stricken defense testimony.

█ Absent an abuse of discretion, this court will not interfere with a district court's decision to strike all or part of a witness's testimony. *United States v. Panza*, 612 F.2d 432, 438 (9th Cir.1979), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980).

Medina testified on behalf of both defendants. She had already pleaded guilty for her part in the attempted sale, but had not yet been sentenced. On direct examination, she explained that she alone was responsible for the attempted sale. She insisted that neither defendant was involved. Her testimony was crucial to the defense: if the jury believed her, it would have had to acquit Negrete and Mendoza on all three counts.

On cross-examination, the government asked her to identify her source òf cocaine. She refused. She said that to do so would jeopardize the lives of her children. She would say only that neither Negrete nor Mendoza provided her the drugs. Based on her refusal to name her source, the court granted the government's motion to strike her entire testimony.

The leading case in this area is remarkably similar. In *United States v. Lord*, 711 F.2d 887 (9th Cir.1983), a jury convicted the defendant of distributing cocaine, conspiring to distribute cocaine and violating section 924. *Id.* at 888. Lord sold drugs to Spaulding, an undercover agent. Lord defended on a theory of entrapment. *Id.* at 889. At trial, Lord's witness Ogden bolstered Lord's entrapment defense by testifying that Spaulding often badgered people for drugs, and that Ogden had introduced several suppliers to Spaulding. *Id.*

On cross-examination, the government asked Ogden to reveal the names of the suppliers she had introduced to Spaulding. She refused, invoking her Fifth Amendment privilege. *Id.* The court ordered her testimony stricken.

■ On appeal, we noted that striking a witness's entire testimony is an extreme sanction, not to be lightly imposed. *Id.* at 892. In finding error in the court's striking of Ogden's testimony, we set forth the now well-established rule that a court

> may apply this sanction only when the question asked pertains to matters directly affecting the witness's testimony; the judge may not use the sanction when the privileged answer pertains to a collateral matter.

*Id.; see also United States v. Esparsen*, 930 F.2d 1461, 1469 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). We found the error harmless, though, because the testimony was merely cumulative of that of several other witnesses. 711 F.2d at 892.

■ Here, as in *Lord*, the identity of the unknown suppliers is only peripherally related to the witness's direct testimony. At trial, the government established that Medina had planned to sell cocaine to Lopez and Weeks. Negrete and.Mendoza were tried for their alleged help in Medina's attempts to complete that sale. Neither was charged with supplying Medina. The identity of her source was collateral to the issues at trial and to her testimony on direct examination. Any possible relevance to the issues at trial dissipated when she made clear that her supplier was someone other than Mendoza or Negrete.

Medina, unlike the witness in *Lord*, asserted fear of reprisal rather than her Fifth Amendment privilege as justification for her refusal to answer. Despite this difference, however, we find the *Lord* analysis applicable here. The key question is whether the defendant's right to present witnesses can be protected without frustrating the government's interest in effective cross-examination. A witness's reason for refusing to answer is crucial in determining whether to hold the witness in contempt, but it plays no role in considering whether the cross-examination was frustrated. The right to present witnesses is obviously not unlimited, but the rule distinguishing between collateral and direct issues properly limits it. *Cf. Panza*, 612 F.2d at 436–39 (suggesting without deciding that a nonprivileged refusal to answer does not justify striking a witness's entire testimony if the questioning pertained only to collateral matters).

We cannot conclude here, however, as we did in *Lord*, that the error was harmless. *See Lord*, 711 F.2d at 892. Medina's testimony was not merely cumulative of that of other witnesses. She was the defendants' key witness, and no other witness could duplicate her testimony. The jury, of course, could have disbelieved her, but it was not given the opportunity to consider her testimony under the court's ruling.

### B.  Post–*Miranda* silence.

The government erred by making an issue of Negrete's post-arrest silence, and the court èrred by allowing it over defense counsels' strong objections.

■ The Supreme Court has made clear that a defendant may exercise his constitu-

tional right to remain silent and not be penalized at trial for doing so. The government may not use a defendant's post-*Miranda* warning silence to impeach the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). That is exactly what happened here.

■ On direct examination, Negrete provided an exculpatory story explaining why he had the pistol when he was arrested. He said he was returning it to its true owner, someone named "Paco". Also, both Negrete and Mendoza testified that they were not involved in that attempted sale, that Medina was the only one involved. On cross examination, the government repeatedly asked Negrete to explain why he failed to tell his story to the arresting agents. The government emphasized the point by asking the agents if either defendant offered an exculpatory story on the night they were arrested.

Under *Fletcher*, the questions would have been permissible if they had focused only on pre-*Miranda* warning silence. But here the questions were very broad, encompassing both pre- and post-*Miranda* silence (emphasis added):

Q [to an agent]. At *any time that night*, when you were conversing with the defendants, ... did anyone say that the pistol carried by Negrete was only carried as he was returning it to a friend?

Q [to an agent]. Did anybody say that the defendants ... were not involved in that drug transaction that night?

Q [to an agent]. *At any time* did [Negrete] say that he was only returning that firearm?

Q [to Negrete]. Did you tell the police that you were returning the pistol to the owner?

On appeal, counsel insisted that "in his own mind" he was asking only about pre-*Miranda* silence. We decline the government's invitation to allow subjective intent to rescue obviously impermissible questioning. To hold otherwise would render meaningless the rule of *Doyle* and *Fletcher*.

Nor do we find, as the government suggests, that the error was harmless beyond a reasonable doubt. The evidence against the defendants was far from overwhelming. Both defendants suffered prejudice justifying a new trial.

### C. Instructional errors.

Because we find that the court created reversible error when it struck Medina's testimony and permitted questioning about post-warning silence, we need not decide whether the court's instructional errors justify reversal as well. We discuss each briefly, however, to ensure they are avoided on remand.

#### 1. 18 U.S.C. § 924 instruction.

The court instructed the jury that:

Section 924 provides in pertinent part that it shall be unlawful for any person to use or carry a firearm during *and/or* in relation to any drug trafficking crime.

(emphasis added). This is simply wrong. Section 924 provides that "[w]hoever, during *and* in relation to any ... drug trafficking crime ... uses or carries a firearm, shall ... be sentenced to imprisonment for five years...."

By misinstructing the jury, the court left open the possibility that the jury could convict the defendants without finding all essential elements of a section 924 violation. The jury may have rested its verdict on a finding that the pistol was carried or used during the attempted sale, without also finding the "in relation to" requirement satisfied. On remand, the defendants are entitled to an instruction that correctly reflects the law, without the troublesome "and/or" language.

#### 2. Mental state required for conspiracy.

The court instructed that to convict on the conspiracy count, the jury must find:

■ That the conspiracy described in the Indictment was *willfully* formed ...;

■ That the accused *willfully* became a member of the conspiracy;

■ That one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the Indictment ...; and

■ That such overt act was knowingly done in furtherance of some object of the conspiracy, as charged....

What the evidence in the case must establish beyond a reasonable doubt is that the alleged conspiracy was *knowingly* formed, and that one or more of the means or methods described in the Indictment were agreed upon to be used, in an effort to effect or accomplish some object or purpose of the conspiracy ...; and that two or more persons, including one or more of the accused, were *knowingly* members of the conspiracy....

(emphasis added).

As Negrete and Mendoza point out, there is an apparent conflict in the instructions, regarding whether the conspiracy must have been willfully or knowingly formed and whether they must have willfully or knowingly entered it. Although we agree that these instructions are potentially confusing, we reject the defendants' suggestion that willfulness is the correct standard to apply.

Defendants confuse the *mens rea* standard with the conduct the government was required to show. They correctly assert that mere *knowledge of a conspiracy* is an impermissible basis for a conspiracy conviction. *See, e.g., United States v. Torres–Rodriguez,* 930 F.2d 1375, 1388 (9th Cir. 1991). This is far different, however, from *knowingly entering* or *knowingly becoming members* of the conspiracy.

The instructions as a whole require that the jury find that, at a minimum, the defendants knowingly entered the conspiracy. The law in this circuit requires no more. *E.g., United States v. Melchor–Lopez,* 627 F.2d 886, 890–91 (9th Cir.1980). Nevertheless, we suggest on remand that the court instruct the jury consistently on the required mental state.

### *3. Mere presence instruction.*

The court refused to give defendants' proposed instruction that "mere presence" can not serve to establish possession with intent to sell or aiding and abetting.

■ If the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a "mere presence" instruction is unnecessary. *United States v. Chambers,* 918 F.2d 1455, 1460 (9th Cir.1990); *United States v. Wright,* 742 F.2d 1215, 1221–22 (9th Cir.1984), *overruled on other grounds, United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

Based on our review of the record, we find that Mendoza was entitled to the instruction. The government's case against him rested primarily on his presence. He accompanied Medina to the parking lot meeting and was in the house, but not in the bedroom, during the attempted sale. Little more links him to the attempted sale. His activity in the parking lot was described by agents as countersurveillance and he passed a knife into the bedroom when requested to do so by Medina. These factors were important, but the key evidence remained his presence at the initial meeting and in Medina's house. He was entitled to the requested instruction.

### D. Rule 41 violation.

We review *de novo* motions to suppress, and any factual findings made at the suppression hearing for clear error. *United States v. Limatoc,* 807 F.2d 792, 794 (9th Cir.1987). We also review *de novo* whether the good faith exception to the exclusionary rule applies. *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

Negrete and Mendoza contend that the warrant for the search of Medina's house was invalid. They insist that the DEA and the issuing judge violated Rule 41 of the Federal Rules of Criminal Procedure, and the error requires suppression. We agree that the issuing judge erred, but applying *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we find that the agents' objective good faith re-

liance on the warrant precludes suppression.

Rule 41 violations fall into two categories: fundamental errors and mere technical errors. Fundamental errors are those that result in clear constitutional violations. *United States v. Freitas*, 856 F.2d 1425, 1433 (9th Cir.1988). These errors require suppression, unless the officers can show objective good faith reliance as required by *Leon*. *United States v. Luk*, 859 F.2d 667, 671 (9th Cir.1988).

Technical errors, on the other hand, require suppression only if: (1) the defendants were prejudiced by the error, or (2) there is evidence of deliberate disregard of the rule. Prejudice in this context means the search would otherwise not have occurred or would have been less intrusive absent the error. *United States v. Johnson*, 660 F.2d 749, 753 (9th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).

Here, the agents violated Rule 41 by failing to read a verbatim copy of the warrant to Judge Dirks. Rule 41(c)(2)(B). The agents read the issuing judge the supporting affidavit, and the judge instructed them to complete a warrant "consistent with" the affidavit, and then to sign his name to it. Rule 41 requires more. The requesting agent must read the actual warrant to the judge before affixing the judge's authorized signature to it. Relying on the judge's instructions to the contrary, the agents violated this provision of the rule.

We agree that this is more than a mere technical violation. It ran afoul of the constitutional prohibition against open-ended warrants. *See Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). The error here is not as egregious as that in *Lo–Ji Sales*. Agents did not add to the warrant once the search began, and the affidavit circumscribed the discretion of the officers in completing the warrant. Nevertheless, we hesitate to entrust to executing officers, no matter how well intentioned, the important task of completing the warrant. *See id.* at 325, 99 S.Ct. at 2323.

Under *Leon*, the seized evidence may nonetheless be admissible. At first glance, the standard for determining whether to apply *Leon* appears similar to Rule 41's "deliberate disregard" test for technical errors, but the tests are not coextensive. *Leon's* scope is much broader, for it may apply to both technical and fundamental errors. Yet *Leon's* standard is more difficult to meet. To take advantage of *Leon*, the executing agents can not merely show that they did not deliberately disregard Rule 41. They must demonstrate an *objectively reasonable* basis for their mistaken belief that the warrant was valid. *United States v. Michaelian*, 803 F.2d 1042, 1047 (9th Cir.1986).

Here, the agents followed the express directions of the issuing judge. After reading the affidavit, the agents completed a warrant consistent with it and affixed the judge's name. We conclude that under these circumstances, the agents' mistaken belief that this was a valid means of completing a telephonic search warrant meets the test of *Leon*.

Our holding is consistent with the underlying purpose of the exclusionary rule. Although the agents erred in not reading the actual warrant to the judge, they did so at the insistence of the judge. Certainly, the agents played a role in the mistake, but the error was primarily the judge's. The exclusionary rule is designed to deter police misconduct, not that of judges and magistrates. *See Illinois v. Krull*, 480 U.S. 340, 349–52, 107 S.Ct. 1160, 1166–68, 94 L.Ed.2d 364 (1987).

Nor do we leave open the possibility of future abuse. Reliance on an open-ended warrant such as the warrant in *Lo–Ji Sales*, could not meet the objective reasonableness test of *Leon*. If the agents here, for example, had completed the warrant inconsistent with the affidavit or added to it as they discovered additional contraband during the search, their reliance could no

longer meet the test of *Leon*. Acting as they did, however, completing a warrant that did not exceed the bounds of the affidavit, at the direction of the issuing judge, the agents met the test of objective reasonableness.[1]

### III

Negrete and Mendoza challenge their convictions on several other grounds as well. They challenge the court's: (1) finding that sufficient evidence supported the verdicts; (2) refusal to ask a juror if he or she had been sleeping; (3) grant of the jury's request during deliberation to replay tapes of Spanish conversations; (4) refusal to rule on Negrete's Rule 609 motion; (5) inclusion of an unlabelled copy of the indictment with the jury instructions; and (6) exclusion of the testimony of two defense witnesses. The defendants also challenge several evidentiary rulings and jury instructions other than those discussed above. We have carefully considered each of these contentions and find merit in none.

REVERSED and REMANDED for a new trial.

---

1. The warrant was in fact narrower in scope than the affidavit. As the defendants point out, although the affidavit requested authorization to search for firearms, the warrant itself did not mention weapons. Apparently, the agents forgot to include it when they completed the warrant. Negrete and Mendoza insist that the .25 caliber pistol found in the house should have been suppressed.

The pistol is admissible under the plain view exception to the warrant requirement. To allow evidence under this exception, the officers must be in a lawful position to observe the evidence, they must inadvertently discover it, and it must obviously be contraband of some sort. *United States v. Disla*, 805 F.2d 1340, 1346 (9th Cir. 1986).

The agents were lawfully on the premises, conducting an authorized search. They found the pistol in a bedroom dresser, a reasonable place to search when searching for drugs. Nothing suggests that the discovery was not inadvertent. Once they found the pistol, it was reasonable for them to presume that it was associated with unlawful activity.