UNITED STATES of America, Plaintiff—Appellee,

v.

Shlomo LEVY, Defendant—Appellant.

No. 05–50958.

United States Court of Appeals, Ninth Circuit.

Argued and submitted Oct. 18, 2006.

Filed Nov. 17, 2006.

---

Joseph F. Walsh, Esq., Los Angeles, CA, for Defendant–Appellant.

Thomas P. Sleisenger, Esq., Becky S. Walker, Esq., USLA–Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Before: GIBSON *, FISHER and CALLAHAN, Circuit Judges.

## MEMORANDUM **

Defendant Shlomo Levy was convicted by a jury of conspiracy to import 3, 4–methylenedioxymethamphetamine (Ecstasy), conspiracy to possess with intent to distribute Ecstasy, aiding and abetting the importation of Ecstasy and aiding and abetting the possession with intent to distribute Ecstasy. Levy appeals his conviction and 210–month sentence on nine grounds. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and we affirm. Because the parties are familiar with the facts, we do not recite them in detail.

█ First, the government concedes and we agree that the admission of the guilty pleas of four alleged co-conspirators was error under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), but we hold that this error was harmless. The pleas were not needed to establish the existence of the Ecstasy trafficking conspiracy because its existence was already supported by witness testimony, drug shipment receipts and phone records showing extensive contacts between the conspirators. Similarly, the pleas did not significantly bolster the credibility of government witness Esudri because his claims that the four individuals who pled

---

* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

guilty were involved in the conspiracy were corroborated by abundant other evidence and there was no material conflict with Morjosef's post-trial statements. The *Crawford* error was thus harmless beyond a reasonable doubt.

■ Second, the district court did not err in declining to suppress wiretap evidence because the intercepted conversations were not sealed "immediately," as required by statute. *See* 18 U.S.C. § 2518(8). Although the Wiretap Order 329D tapes were not sealed immediately, it was unclear in April 2001, when the wiretap phase of the investigation was taking place, that Wiretap Order 329E was not an "extension" of Wiretap Order 329D. The definition of "extension" in the Ninth Circuit was not settled until *United States v. Hermanek*, 289 F.3d 1076 (9th Cir.2002), was decided more than a year later. *See id.* at 1086. Moreover, any mistake made by Agent Reuter was reasonable and hence a "satisfactory explanation" for the delay in sealing the intercepted conversations. *See id.* at 1088. Reuter's belief that Wiretap Order 329E qualified as an extension of Wiretap Order 329D because four of the same telephones were tapped turned out to be incorrect, but was a plausible reading of the statute—in fact, one that neither this circuit nor the Supreme Court had rejected at the time of the wiretap orders at issue.

■ Third, the district court did not violate Levy's Confrontation Clause rights or abuse its discretion when it allowed Esudri to assert his Fifth Amendment privilege in response to questions on cross-examination about pending car loan fraud and perjury charges. The unanswered questions all related to the collateral issue of Esudri's credibility, not his direct testimony. *See United States v. Negrete–Gonzales*, 966 F.2d 1277, 1280 (9th Cir.1992). There is no indication that *Crawford* disturbed the direct-collateral distinction, nor

does Levy cite any cases suggesting that it did. Furthermore, any error that the district court might have committed (constitutional or evidentiary) was harmless since Esudri's cross-examination was quite thorough and the evidence about his pending charges would have been cumulative.

■ Fourth, the government concedes that its failure to disclose evidence about Esudri's mental condition was error under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but there is no allegation of governmental bad faith. Levy's *Brady* claim fails because virtually all of the undisclosed evidence dealt with Esudri's mental condition *after* the end of Levy's trial. In addition, any *Brady* error was not material since even if Esudri had been depressed prior to Levy's trial, this fact only slightly weakens the reliability of his testimony. Levy offers no evidence that the testimony of depressed persons is more likely to be dishonest or unreliable, and Esudri's medical records uniformly attest to his lucidity.

■ Fifth, the district court did not err in rejecting Levy's motion for a new trial based on Morjosef's newly discovered testimony that Levy did not accompany Esudri to Los Angeles Airport (LAX) on February 9, 2001. Morjosef's testimony does not substantially undermine Levy's conspiracy convictions because, even without Esudri's testimony about the LAX Ecstasy shipment, a great deal of evidence connected Levy to the Ecstasy trafficking organization. Morjosef's testimony does tend to undercut Levy's convictions on the second and fourth counts (relating to the Ecstasy delivery at LAX), but not to such a degree that a new trial is warranted. Importantly, nothing Morjosef said directly contradicted Esudri's testimony that the LAX Ecstasy shipment was intended for Levy, and Levy could in any case have been convicted for the LAX delivery under

*Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). *See United States v. George,* 420 F.3d 991, 1000 (9th Cir.2005) (defendant entitled to new trial only when, if granted, it would probably result in acquittal).

■ Sixth, the district court did not err under Fed.R.Evid. 404(b) when it admitted Toliyat's testimony that he purchased Ecstasy from Levy on four occasions in October and November 2001. Toliyat's testimony helped establish Levy's knowledge of the conspiracy and intent to commit the underlying offenses; there was sufficient evidence to find that Levy sold the Ecstasy to Toliyat; and the drug transactions between Levy and Toliyat overlapped temporally with the conspiracy and were similar to the charged offenses. *See United States v. Holler,* 411 F.3d 1061, 1067 (9th Cir.2005). Even if Toliyat's testimony were inadmissible under Rule 404(b), there was still no error because the conduct described by Toliyat was "inextricably intertwined" with the charged offenses. *See United States v. Williams,* 989 F.2d 1061 (9th Cir.1993). Levy's "single criminal episode" included both the sale of Ecstasy to Toliyat and all the other drug transactions Levy conducted as a member of the Ecstasy trafficking organization. *Id.* at 1070.

■ Seventh, there was sufficient evidence to convict Levy on the second and fourth counts, relating to the LAX Ecstasy shipment. A rational trier of fact could have found Levy *directly* liable for those offenses because there is evidence that the LAX Ecstasy shipment was intended for Levy, that Levy was supposed to go the airport along with Esudri, that Levy was in frequent contact with two other conspirators involved in the shipment and that Levy incurred a $17,000 debt after the Ecstasy was seized by the police. A rational fact-finder could also have convicted Levy on a *Pinkerton* theory of liability since substantial evidence connected Levy to the conspiracy prior to February 9, 2001. Levy frequently spent time with other conspirators in the mid–1990s and he was in phone contact with Lachmi and Tuito, the head of the conspiracy, in 2000 and 2001.

■ Eighth, there was no cumulative error that would require the reversal of Levy's convictions. The only two errors that actually transpired at Levy's trial—the admission of the co-conspirators' guilty pleas and the nondisclosure of Esudri's medical records (if in fact any of them dealt with Esudri's mental condition prior to the trial)—were not prejudicial even when added together. The harmlessness inquiry for each of these errors did not present a close question, meaning that even when the errors are aggregated it cannot be said that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

■ Finally, the district court did not erroneously enhance Levy's sentence when it took into account not only the 9 kg of Ecstasy seized at LAX but also the approximately 30 kg that were allegedly sent in two shipments to San Francisco. Abundant evidence linked Levy to the San Francisco shipments. For instance, the same Munich auction house that sent Ecstasy hidden in picture frames to the S.O. Fashions store in Los Angeles (the shipment that was seized) also was responsible for the shipments to San Francisco, and Levy was in phone contact with the individuals responsible for retrieving the San Francisco shipments around the time of the shipments' delivery. We also hold that the district court accurately approximated the quantity of Ecstasy contained in the San Francisco shipments. *See United States v. Culps,* 300 F.3d 1069, 1076 (9th Cir.2002). The court was able to estimate

reliably the ratio of total package weight to amount of Ecstasy from the seized S.O. Fashions shipment, and it knew from the UPS airbills the exact total weights of the two San Francisco shipments. The court also reduced its estimates of the San Francisco shipments' gross weights when calculating the Ecstasy quantity in order to be conservative.

**AFFIRMED.**

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.