**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GRANT MANAKU,
*Defendant-Appellant.*

No. 20-10069

D.C. No.
1:18-cr-00069-LEK-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 1, 2021
Honolulu, Hawai'i

Filed June 14, 2022

Before: Richard R. Clifton, Ryan D. Nelson, and
Daniel P. Collins, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Collins

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's denial of Grant Manaku's pretrial motion to suppress evidence, which asserted that FBI agents executing a search warrant at his residence deliberately violated Fed. R. Crim. P. 41(f)(1)(C) by failing to supply a complete copy of the warrant.

As the government conceded on appeal, the agents violated Rule 41(f)(1)(C) by delivering only the face page of the warrant rather than a complete copy.

Explaining that suppression is automatic only for "fundamental" violations of Rule 41, at least without any applicable exception to the exclusionary rule, the panel noted that Manaku contended neither that the violation here was fundamental nor that he was prejudiced by it. The only remaining question, therefore, was whether the district court correctly concluded that the agents' failure to deliver a complete copy of the warrant at the completion of the search was merely negligent, rather than the product of a deliberate disregard of the rule. The panel held that the district court properly concluded that Manaku had not carried his burden to show a deliberate disregard of the rule. In so holding, the panel found no clear error in the district court's finding that Agent Sherwin Chang did not act intentionally, and rejected Manaku's contention that the district court failed to adequately consider the possibility that another agent had

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

deliberately disregarded Rule 41(f)(1)(C) by unstapling the pages of the warrant and leaving only an incomplete copy.

Judge Collins concurred in the judgment. He wrote that whether to affirm or reverse the judgment turns entirely on the continued vitality of the second and third holdings in *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999)—that Rule 41 requires production of the warrant upon demand during the search, and that the deliberate refusal to supply the warrant upon demand requires suppression. Judge Collins wrote that by refusing at least four direct requests from property owners to produce the warrant during the search, the agents deliberately and repeatedly violated Rule 41, as construed in *Gantt*, and *Gantt* would require suppression. Because he concludes that *United States v. Grubbs*, 547 U.S. 90 (2006), overruled not just *Gantt*'s first holding (that Rule 41 requires officers to give an occupant whose premises are being searched a complete copy of the warrant at the outset of the search), as all parties agree, but also *Gantt*'s second and third holdings, he concurred in the judgment affirming the denial of the suppression motion.

**COUNSEL**

Craig Jerome (argued), Assistant Federal Defender; Peter C. Wolff Jr., Federal Public Defender; Office of the Federal Public Defender, Honolulu, Hawaii; for Defendant-Appellant.

Marion Percell (argued), Chief of Appeals; Kenji M. Price, United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

Defendant-Appellant Grant Manaku appeals his conviction for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). He contends that the district court should have granted his pretrial motion to suppress evidence, which asserted that FBI agents executing a search warrant at his residence deliberately violated Federal Rule of Criminal Procedure 41(f)(1)(C) by failing to supply a complete copy of the warrant. We affirm.

I

The FBI discovered that a device at a particular IP address contained suspected child pornography files. After several hours of downloading files available for file sharing, an agent downloaded 308 files of horrific child pornography from the device. An administrative subpoena revealed that the IP address was the Dela Cruz residence in Waipahu, Hawai'i, where Manaku resided at that time. Based on these facts, the FBI obtained a search warrant for the Dela Cruz residence from a federal magistrate judge.

When FBI agents executed the search warrant, they first met at an off-site location for briefing, and each reviewed and signed a copy of the five-page warrant. A SWAT team secured the residence, and the search followed. During the near six-hour search, Ms. Dela Cruz asked three or four times to see the warrant but was not given any paperwork until the search ended. Her husband, a retired law enforcement officer, arrived home at one point and also asked to see the warrant. He was briefly shown the warrant's first page but never given a copy. He told the agents to make sure to leave a copy of the warrant or to give one to his wife.

Agent Sherwin Chang was supposed to ensure that both the warrant and a property receipt were left at the residence or with someone at the residence. Chang prepared the property receipt that listed every item that had been seized, and at the end of the search, he reviewed that document with Ms. Dela Cruz. He left her what turned out to be an incomplete copy of the search warrant, with only the warrant's first page but not the single-page Attachment A (which described the residence to be searched) and the three-page Attachment B (which described the items to be seized).[1] This incomplete copy had been included in a "search warrant packet" that had been left for Chang on the Dela Cruz's dining room table by an unidentified agent. Before giving it to Ms. Dela Cruz, Chang turned it over and wrote down the phone number of the FBI's Hawai'i field office, so that she could call if she had any questions.

Although Chang had personally reviewed the five-page warrant hours earlier, he testified at the hearing on the motion to suppress that he gave Ms. Dela Cruz the single-page copy without realizing that it was incomplete. Chang could not explain why, despite having written on the back of that single-page copy, he did not notice that it was incomplete. Chang insisted, however, that the error was simply carelessness, he did not intentionally withhold the missing pages, and he was not trying to deceive Ms. Dela Cruz.

The FBI concluded that a laptop seized during the search contained child pornography and that it had been used by

---

[1] Although the record is not entirely clear, the copy of the face page of the warrant that Chang supplied to Ms. Dela Cruz apparently had no pre-printed material where an executing agent could certify the inventory of property seized as well as the return of the warrant.

Manaku rather than the others in the Dela Cruz household. Manaku was indicted for a single count of possession of child pornography involving minors who were prepubescent or under the age of 12, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). He moved to suppress the laptop and evidence obtained from it because the failure to supply a complete copy of the warrant violated Federal Rule of Criminal Procedure 41(f)(1)(C) and the Fourth Amendment.

After conducting an evidentiary hearing and receiving supplemental briefing, the district court denied the motion to suppress. The court found that the agents had violated Rule 41(f)(1)(C) by failing to leave a complete copy of the warrant at the Dela Cruz residence. The court noted that Manaku had conceded in his supplemental brief that this violation of Rule 41 did not entail a violation of the Fourth Amendment. Despite the clear violation of Rule 41, the district court held that suppression was not warranted because Manaku had not been prejudiced by the error and because there was no "evidence that Agent Chang's failure to give Ms. Dela Cruz a complete copy of the Warrant was intentional or a part of an on-going pattern of behavior by him or other FBI agents." Chang had been "certainly negligent," the court found, but had not intentionally disregarded the rule.

After a five-day jury trial, Manaku was found guilty. The district court sentenced him to 78 months of imprisonment and 10 years of supervised release. Manaku timely appealed.

II

We review the district court's denial of a motion to suppress de novo and its factual finding on that question,

made after an evidentiary hearing, only for clear error. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017).

### III

Manaku does not dispute that the complete search warrant of the Dela Cruz residence was properly issued by a magistrate judge under the Fourth Amendment. Rather, his only contention is that in executing the warrant, the agents violated the requirements of Federal Rule of Criminal Procedure 41 and that the evidence seized should have been suppressed. We hold that the district court properly declined to order suppression, even though Rule 41 was violated, because the violation did not merit the remedy of suppression.

### A

Rule 41(f)(1) sets forth several specific requirements for the execution of search and arrest warrants. For search warrants, (A) the "exact date and time" of the search must be noted on the warrant; (B) an inventory of property seized must be prepared; (C) a copy of the warrant and a receipt for the property seized must be supplied to the relevant person from whom the property was taken; and (D) the executed warrant and a copy of the inventory must be returned to the designated magistrate judge. Fed. R. Crim. P. 41(f)(1)(A)–(D). As for the third requirement, the officer executing the warrant "must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

Here, by providing only the face page of the warrant without its attachments, the FBI violated Rule 41(f)(1)(C)'s

requirement to deliver a complete copy of the warrant. When a search warrant relies on attachments to satisfy the constitutional requirement that the warrant describe with particularity "the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV, those attachments form an essential part of the warrant and must be delivered with the warrant under Rule 41(d). *See United States v. Gantt*, 194 F.3d 987, 1000 n.7 (9th Cir. 1999).[2] The warrant to search the Dela Cruz residence was incomplete without its attachments, especially Attachment B specifying with particularity the items that could be seized.[3] Thus, the agents violated Rule 41(f)(1)(C) by delivering only the face page of the search warrant rather than a complete copy of the warrant. Indeed, the Government concedes this point on appeal.

B

A Rule 41 violation in the execution of a search warrant, however, does not necessarily mean that the evidence seized during that search must be suppressed. *See United States v. Henderson*, 906 F.3d 1109, 1114 (9th Cir. 2018). Suppression is automatic only for "fundamental" violations of Rule 41, at least without any applicable exception to the

---

[2] *Gantt* was later explicitly overruled on a separate point, relating to the jurisdictional requirements for an interlocutory appeal of a suppression order under 18 U.S.C. § 3731. *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc).

[3] The face page of the warrant here arguably did sufficiently describe the place to be searched, because it disclosed the building address of the house to be searched in the caption of the document. The text of the warrant described the place to be searched by referring to an Attachment A, which repeated that same address, further described the structure, and included a photograph.

exclusionary rule. *Id*. at 1115. We have described such "fundamental" violations of Rule 41 as "those that result in clear constitutional violations." *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1283 (9th Cir. 1992). Any other violations of the rule are "technical errors" that "require suppression only if the defendant can show either that (1) he was prejudiced by the error, or (2) there is evidence of 'deliberate disregard of the rule.'" *Henderson*, 906 F.3d at 1115 (quoting *Negrete-Gonzales*, 966 F.2d at 1283).

Manaku contends neither that the violation here was fundamental nor that he was prejudiced by it. This is not, for example, a case in which the agents delivered an incomplete warrant after searching places not authorized by the warrant or seizing items not specified in it. *Cf. Negrete-Gonzales*, 966 F.2d at 1283 ("Prejudice in this context means the search would otherwise not have occurred or would have been less intrusive absent the error."). The only remaining question, therefore, is whether the district court correctly concluded that the agents' failure to deliver a complete copy of the warrant at the completion of the search was merely negligent, rather than the product of a "deliberate disregard of the rule." *Id*. We find no error in the district court's conclusion.

Agent Chang had the responsibility to supply the requisite paperwork after the search and had the last chance to catch the error, and the district court therefore properly focused its analysis on his conduct. Chang testified at the evidentiary hearing and was questioned by counsel for both sides, as well as by the district court. The court was troubled that Chang failed to catch the clear mistake in delivering only the face sheet of the warrant, especially given that he turned that single page over so that he could write down the phone number of the FBI's Hawai'i field office. But having

observed his testimony, the district court chose to credit Chang's assertion that he was negligently oblivious to the error, and the court found that he did not act intentionally. We see no clear error in this finding and nothing in the record that would warrant our setting it aside.

Manaku still asserts that the district court failed to adequately consider the possibility that another agent—such as the unidentified agent who left the incomplete copy for Manaku in the "search warrant packet"—had deliberately disregarded Rule 41(f)(1)(C) by unstapling the pages of the warrant and leaving only an incomplete copy. Manaku argues that other agents' withholding of the warrant was deliberate disregard because they were reminded of the need to give a complete warrant after being asked for it several times and therefore not giving the complete warrant at the end of the search could not have been an accident. *See Gantt*, 194 F.3d at 1005.[4]

We reject this contention. Reviewing the record as a whole, the district court rejected the idea that Agent Chang's failure to give Ms. Dela Cruz a complete copy of the warrant was intentional or a part of an on-going pattern of behavior "by him or other FBI agents." The court likewise stated that "the agents' violation of Fed. R. Crim. P. 41(f)(1)(C) . . . was not deliberate," because the other agents' refusal to supply the warrant earlier would be equally consistent with an intention to defer to the agent in charge of delivering the paperwork at the end of the search—Agent Chang. There is no non-speculative basis to infer that the agents expected

---

[4] The Government contends that *United States v. Grubbs*, 547 U.S. 90 (2006), overrules *Gantt*. But Manaku cites *Gantt* only to show that the Rule 41 violation discussed above was deliberate, conceding that *Grubbs* overruled *Gantt*'s pre-search presentment requirement.

(much less hoped) that Agent Chang would fail to do so. Without clear indication in the record as to how the incomplete copy came to be included in the search warrant packet, we cannot say that the district court clearly erred in declining to find that it resulted from a deliberate attempt to violate Rule 41.

The district court properly concluded that because Manaku had not carried his burden to show a "deliberate disregard of the rule," the costly judicial remedy of suppression was not warranted in this case. *Henderson*, 906 F.3d at 1115 (citation omitted); *cf. Herring v. United States*, 555 U.S. 135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."); *United States v. Hector*, 474 F.3d 1150, 1154–55 (9th Cir. 2007) (even assuming "the failure to serve a copy of the warrant was a violation of the Fourth Amendment, the exclusionary rule should not be applied" since the "causal connection between the failure to serve the warrant and the evidence seized is highly attenuated" and "the social costs of excluding relevant evidence obtained pursuant to a valid search warrant are considerable").

\* \* \*

Accordingly, we **AFFIRM** the denial of Manaku's motion to suppress and, as a result, his conviction and sentence.

COLLINS, Circuit Judge, concurring in the judgment:

We held in *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), that (1) Federal Rule of Criminal Procedure 41 "requires officers to give" an occupant whose premises are being searched "a complete copy of the warrant at the outset of the search"; (2) the agents in *Gantt* engaged in a deliberate violation of Rule 41 by "fail[ing] to show Gantt the complete warrant *even after she asked to see it*"; and (3) this deliberate refusal to supply the warrant upon demand, or at the outset, "requires suppression." *Id*. at 1005 (emphasis added). As the majority notes, all parties agree that the *first* of these three holdings was overruled by the Supreme Court's decision in *United States v. Grubbs*, 547 U.S. 90 (2006). *See* Opin. at 2 n.4. But if *Gantt* nonetheless remains good law on the second and third points, then in my view the district court's denial of Manaku's motion to suppress must be reversed. By refusing at least four direct requests from the property owners to produce the warrant during the search, the agents here deliberately and repeatedly violated Rule 41, as construed in *Gantt*, and *Gantt* therefore would require suppression. Indeed, even the Government acknowledges in its brief that, under *Gantt*, "the act of refusing to show a warrant after receiving a request for it *would* be deliberate and intentional."

However, if *Grubbs* also overruled *Gantt*'s holding that Rule 41 requires agents to produce the warrant *upon request* during the search, then the only violation of Rule 41 in this case would be Agent Chang's omission of the warrant's additional pages when he left behind a copy at the conclusion of the search. In that circumstance, I would agree with the majority's conclusion that the district court did not clearly err in finding that Agent Chang's error was negligent rather than intentional and that suppression was not warranted.

Consequently, whether to affirm or reverse the judgment in this case turns entirely on the continued vitality of *Gantt*'s holding that Rule 41 requires production of the warrant upon demand during the search.  We therefore cannot avoid deciding that issue.[1]   Because I conclude that *Grubbs* overruled that aspect of *Gantt* as well, I concur in the judgment affirming the district court's denial of Manaku's motion to suppress.

---

[1] The majority acknowledges that the Government's answering brief squarely raised the issue of whether this aspect of *Gantt* was overruled by *Grubbs*, but it nonetheless insists that Manaku's opening brief did not place the issue before us.  According to the majority, Manaku's opening brief conceded that *Grubbs* overruled *Gantt*'s "*pre-search* presentment requirement," and his brief cited *Gantt* only to make the narrower argument that the agents' earlier refusals to produce the warrant show that *Agent Chang's later refusal to leave behind the complete warrant* must be considered to be deliberate.  *See* Opin. at 10 n.4 (emphasis added).  Thus, in the majority's view, Manaku's brief does *not* contend that there were multiple violations of Rule 41, but only that Agent Chang's single violation of that Rule at the end of the search was deliberate.  That is wrong.  In his opening brief, Manaku carefully conceded *only* that *Grubbs* had overruled *Gantt*'s show-at-the-outset holding.  As to *Gantt*'s *show-on-demand* holding, Manaku expressly quoted the relevant language from *Gantt* and argued that this "precedent requires suppression here too," in part "because agents inexplicably disregarded repeated requests to produce the warrant."  After the Government's brief argued in response that *Grubbs* overruled *Gantt*'s show-on-demand holding as well, Manaku's reply brief unsurprisingly focused on the aspects of his argument that would survive such a conclusion, but it did not abandon the point or concede that the Government was correct.  On the contrary, when specifically asked at oral argument, Manaku confirmed that, in his view, "*Grubbs* specifically left open the question of whether agents are required to produce the warrant *upon the request of the homeowner*" (emphasis added).  The continued validity of this aspect of *Gantt* is thus squarely presented here.

# I

Federal Rule of Criminal Procedure 41 provides that the "officer executing the warrant" must do one of two things: (1) "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken" or (2) "leave a copy of the warrant and receipt at the place where the officer took the property." *See* FED. R. CRIM. P. 41(f)(1)(C). Despite the rule's clear use of alternative language in describing these two options for providing a copy of the warrant, *Gantt* expressly rejected the view that "leaving the warrant behind after the search always suffices." 194 F.3d at 1001. Instead, we held that, "[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant at the *outset* of the search on persons present at the search of their premises."**[2]** *Id*. (emphasis added). We explained that such at-the-outset notice was necessary in order to ensure that the subjects of the search were "assure[d]" of the scope of the agents' authority under the warrant, so that those subjects would have "the opportunity to calmly argue that agents are overstepping their authority or even targeting the wrong residence." *Id*. at 1001–02. "A warrant served after the search is completed," we reasoned, cannot fulfill such purposes. *Id*. at 1002. Applying that holding to the facts of *Gantt*, we held that the agents there "deliberate[ly]" violated Rule 41 by "fail[ing] to show Gantt the complete warrant *even after she asked to see it*." *Id*. at 1005 (emphasis added). Manaku correctly notes that this holding is "[d]irectly on point" here. I turn, therefore, to the Government's contention that the Supreme Court's decision

---

**[2]** At the time, the relevant language of Rule 41 was contained, with immaterial differences in phrasing, in subdivision (d) of the rule.

in *Grubbs* overruled this show-on-demand aspect of *Gantt* as well.

In *Grubbs*, federal officers obtained a search warrant for Grubbs's residence after submitting an affidavit to a magistrate judge explaining that, if granted, the warrant would not be executed until a planned controlled delivery of child pornography to that residence was first completed. 547 U.S. at 92. After carrying out the controlled delivery, the officers then executed the search warrant and seized a variety of items, including the tape that had just been delivered (which Grubbs had ordered from a website operated by an undercover agent). *Id*. at 92–93. About 30 minutes into the search, the agents provided Grubbs with a copy of the warrant, but they did not give him a copy of the supporting affidavit that mentioned that execution of the warrant was conditioned on completion of the controlled delivery. *Id*. at 93.

On appeal from Grubbs's ensuing conviction for receiving child pornography, we held that the Fourth Amendment required that "the triggering conditions of an anticipatory search warrant" must "appear either on the face of the warrant itself" or in its attachments. *United States v. Grubbs*, 377 F.3d 1072, 1078 (9th Cir. 2004), *as amended*, 389 F.3d 1306 (9th Cir. 2004). We further held that the Fourth Amendment required that, if the triggering conditions were set forth in a separate document, such as an affidavit, then that document "must be presented to the person whose property is being searched." *Id*. at 1079. "Absent such presentation," we held, "individuals would stand no real chance of policing the officers' conduct, because they would have no opportunity to check whether the triggering events by which the impartial magistrate has limited the officers' discretion have actually occurred." *Id*. (simplified). And

because we held that the Fourth Amendment itself required such presentation, we did not find it necessary to rely on Rule 41. *See id*. at 1073 n.1. We noted, however, that *Gantt* had squarely held that, under Rule 41(d), the executing agents are required to provide "a complete copy of the warrant at the outset of the search." *Id*. at 1079 n.9 (quoting *Gantt*, 194 F.3d at 994). The Supreme Court reversed. *Grubbs*, 547 U.S. at 97–99.

As an initial matter, the Court held that the Fourth Amendment's specification of what must be included with particularity in the warrant extends only to "'the place to be searched' and 'the persons or things to be seized,'" and "does *not* include the conditions precedent to execution of the warrant." *Id*. at 97–98 (quoting U.S. CONST., amend. IV) (emphasis added). We therefore erred, the Court concluded, in holding that the Fourth Amendment required that the warrant "specify the triggering condition." *Id*. at 97.

The Court further held that we had also erred in stating that, in order to give the property owner a "chance of policing the officers' conduct," the "executing officer must present the property owner with a copy of the warrant *before* conducting his search." *Id*. at 98–99 (emphasis added) (citation and internal quotation marks omitted). In reaching this conclusion, the Court specifically cited—and rejected—the reasoning in a footnote in our opinion in *Grubbs* that had relied on *Gantt*. *Id*. at 98–99 (citing *Grubbs*, 377 F.3d at 1079 n.9). "In fact," the Court held, "neither the Fourth Amendment *nor Federal Rule of Criminal Procedure 41* imposes such a requirement." *Id*. at 99 (emphasis added). In holding that there is no such right, as we had posited, to receive a warrant in time to contemporaneously police the agents' execution of the search, the Court made two points, both of which are pertinent here.

First, the Court stated that "[t]he absence of a constitutional requirement that the warrant be exhibited at the outset of the search, *or indeed until the search has ended*, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches." *Id*. at 99 (quoting *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999) (emphasis added) (ellipses added by Court)). Of course, the statement that the warrant need not be supplied "until the search has ended" is directly contrary to our holding in *Gantt*. Second, the Court held that a contemporaneous debate between the property owner and the officers executing the search is *not* one of the methods by which the Constitution (or Rule 41) seeks to protect against unreasonable searches:

> The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police," and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

*Grubbs*, 547 U.S. at 99 (citation omitted) (ellipsis in original). Notably, the interests identified by the Court are fully satisfied by delivering a copy of the warrant at the *conclusion* of the search.

The Supreme Court in *Grubbs* thus expressly rejected both our reading of Rule 41 in *Gantt* and our rationale for that reading. Accordingly, *Gantt*'s holding that Rule 41 requires service of the warrant at the outset of the search, or in response to a direct request during the search, is no longer

good law.  *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

As I noted earlier, *see supra* note 1, Manaku contended at oral argument that *Grubbs* overruled *Gantt* only to the extent that it held that the warrant must generally be produced at the *outset* of the search.  Manaku insisted that *Grubbs* did not undermine *Gantt*'s further holding that the warrant must be produced upon a specific request, and in support of that view he pointed to Justice Souter's separate opinion concurring in the judgment in relevant part in *Grubbs*.  This contention fails.  Although Justice Souter argued that the Court's decision somehow left open the question whether an owner has a right to "demand to see a copy of the warrant before making way for the police," 547 U.S. at 101 (Souter, J., concurring in judgment in part), the majority's analysis on this issue—which Justice Souter did not join—cannot be reconciled with that view.

As explained above, the Court's rationale for rejecting *Gantt*'s produce-at-the-outset rule was that there is no requirement to deliver the copy of the warrant "until the search has ended," *see id*. at 99 (citation omitted), and *that* rationale cannot be squared with *Gantt*'s produce-upon-demand rule either.  Moreover, the *Grubbs* majority expressly rejected the premise—on which *Gantt*'s deliver-on-request holding was based—that the Constitution or Rule 41 gives owners a "license to engage the police in a debate over the basis for the warrant."  *Id*.  Contrary to the *Grubbs* majority's holding on this point, Justice Souter affirmatively endorsed the view that "showing an accurate warrant" during the search "reliably 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'"  *Id*. at 101 (Souter, J. concurring in

judgment in part) (citation omitted).  A concurrence in the judgment that criticizes the breadth of the majority's reasoning, declines to join it, and purports to limit it, cannot detract from what the majority actually said.  *Cf. Local 1545, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Vincent*, 286 F.2d 127, 132 (2d Cir. 1960) (Friendly, J.) (noting that "dissenting opinions are not always a reliable guide to the meaning of the majority").  Indeed, Justice Souter declined to join the relevant portion of the *Grubbs* majority precisely because he thought that it undervalued "an owner's interest" in obtaining "an accurate statement of the government's authority to search property" before the search was completed.  547 U.S. at 101 (Souter, J., concurring in judgment in part).

I therefore conclude, in accordance with *Grubbs*, that Rule 41(f)(1)(C) is satisfied if, at the end of the search, the agents *either* give a copy of the warrant to the property owner or leave it at the premises.  The agents here thus did not violate Rule 41 in declining to supply Ms. and Mr. Dela Cruz with a copy of the warrant during the execution of the search.

## II

It follows from the foregoing that the only violation of Rule 41 that occurred here was the failure to leave a complete copy of the warrant after the search had been completed.  As to that sole violation, I agree with the majority that the district court did not clearly err in concluding that it was unintentional.  Manaku's motion to suppress was therefore properly denied.

For these reasons, I concur only in the judgment.